UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MELISSA FUSSELL, ET AL.    CIVIL ACTION

VERSUS    NO: 20-3474

JOHNSON & JOHNSON, ET AL.    SECTION: "J" (1)

## ORDER & REASONS

Before the Court is a *Motion for Partial Dismissal of Plaintiffs' Amended Complaint and Jury Demand* **(Rec. Doc. 28)** filed by Defendants, Ethicon, Inc. and Johnson & Johnson (collectively "Defendants"). The motion is opposed **(Rec. Doc. 29)** by Plaintiffs Melissa Fussell and Clinton Fussell (collectively "Plaintiffs"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises out of Plaintiffs' alleged injuries stemming from implantation with Ethicon, Inc.'s TVT prescription pelvic mesh medical device. Ms. Fussell was implanted with the pelvic mesh product on August 16, 2012. After implantation, Ms. Fussell began to suffer from a range of pelvic problems such as scarring, worsened incontinence, pain, dyspareunia, voiding dysfunction, dysuria, frequency, nocturia, urinary tract infections, urgency, and mental health issues.

On December 30, 2020, Plaintiffs filed suit in this Court and later amended their complaint on September 3, 2021. On October 20, 2021, Defendants moved to dismiss claims Counts II and IV for failure to state a claim upon which relief can be

1

granted. Defendants also moved to limit recovery under the Count V redhibition claim and to dismiss Plaintiffs' prayer for punitive damages. On November 8, 2021, Plaintiffs filed an opposition and on November 15, 2021, Defendants filed an additional reply.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

### I.      Count II - Manufacturing Defect

Defendants argue that Plaintiffs have failed to state a plausible manufacturing defect claim. First, Defendants contend that the amended complaint uses threadbare boilerplate language that lacks sufficient factual grounds. Second, Defendants maintain that the limited facts alleged lend to a design defect claim, not a manufacturing defect. In response, Plaintiffs argue they do not need to prove their claim at this stage, and that the facts they have provided are sufficient for purposes of a 12(b)(6) motion.

Under the Louisiana Products Liability Act (LPLA):

> [a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

La. Rev. Stat. § 9:2800.55. A plaintiff must show "not only *what* a manufacturers' specifications or performance standards are for a particular product, but *how* the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'" *Hinson v. Techtronic Indus. Outlets, Inc.*, 126 F.Supp. 3d 747, 752 (W.D. La. Aug. 21, 2015) (citing *Morris v. United Servs. Auto. Ass'n*, 32-528 (La. App. 2 Cir. 02/18/00), 756 So. 2d 549, 558) (emphasis added). Generally, a manufacturing defect can be identified by a defective product that differs from the manufacturer's intended result or from like items in the same product line. *Terrell v. Davol, Inc.*, 2014 U.S. Dist. LEXIS 103695, at *7 (E.D. Penn. July 30, 2014). Unlike

a design defect, a manufacturing defect exists when "a suitable design is in place, but that the manufacturing process has in some way deviated from that design." *Id.* (citing *Lucas v. City of Visalia*, 726 F.Supp. 2d 1149, 1154-55 (E.D. Cal. 2010)).

In *Drumheller v. Johnson & Johnson*, the plaintiff argued that there was a manufacturing defect in the pelvic mesh product due to the use of non-medical grade material and defendants' method of cutting the material, which deviated from its intended design. 2021 U.S. Dist. LEXIS 88941, at *19-20 (E.D. Penn. May 10, 2021). There were two main problems with her argument. First, the plaintiff failed to identify the intended design. *See id.* Second, the use of non-medical grade material and the method of cutting material was an error in the design, not the specific manufactured product implanted in the plaintiff. *Id.* at 19-22. Rather than point to an error in the process, the crux of plaintiff's claim was a defect in the design.

*Drumheller* is nearly factually identical to the present matter. Here, Plaintiffs allege that (1) the pelvic mesh product deviated materially from Defendants' design and manufacturing specifications, (2) the pelvic mesh product was defective due to use of non-medical grade material, (3) and the method of cutting deviated from the design. The first assertion in this case is a threadbare restatement of the law devoid of facts to support the claim. The second and third assertions fail to identify the intended design. Moreover, both the use of non-medical grade material and the method of cutting indicate a defect in the design, not a deviation in the manufacturing of the pelvic mesh product.

Thus, Plaintiffs' claim for a manufacturing defect lacks facial plausibility.

## II. Count IV – Breach of Express Warranty

Defendants also argue that Plaintiffs failed to state a breach of express warranty claim. Specifically, Defendants maintain that statements from Instructions for Use and brochures are not sufficient to constitute an express warranty. Further, the amended complaint leaves unclear how these representations induced the Plaintiff to have the product implanted. Plaintiffs disagree and cite cases that hold that marketing materials may sometimes rise to the level of an express warranty.

To state a plausible claim for breach of express warranty under the LPLA, a plaintiff must show:

> (1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue.

*Celino v. Biotronik, Inc.*, 2021 U.S. Dist. LEXIS 81683, at *33-34 (E.D. La. Apr. 28, 2021). Marketing materials may constitute an express warranty when they warrant the product's safety. *Guidry v. Janssen*, 206 F.Supp. 3d 1187, 1199 (E.D. La. Aug. 29, 2016) (citing *Kennedy v. Pfizer, Inc.*, 2013 U.S. Dist. LEXIS 123292 (W.D. La. Aug. 28, 2013)). It is not sufficient for a plaintiff to simply be aware of or exposed to a warranty, the complaint must contain specific facts that show the warranty induced the plaintiff to use the product. *See id.*

In *Celino v. Biotronik, Inc.*, the plaintiff failed to allege how the warranty induced her to use the product. 2021 U.S. Dist. LEXIS 81683, at *36-37. The Court reasoned that it was not sufficient to allege the plaintiff "was deceived into believing

there was a safe and effective product . . . [T]his statement tells the Court nothing about what [the plaintiff] would have done if no warranty was offered." *Id.* at 37.

Similar to the plaintiff in *Celino*, Plaintiffs here have not supplied sufficient facts to render the "inducement" prong plausible. Plaintiffs allege that Defendants made several expressed warranties within their Instructions for Use and their brochures.[1] The statements regard the products safety, so they may rise to the level of an express warranty. However, as the Court explained in *Celino*, it is not sufficient for Plaintiffs to just be aware of these representations and to have been deceived by them. Plaintiffs need to allege specific facts of how the representations induced them to use the pelvic mesh product and what they would have done if no warranty was offered.

For these reasons, Plaintiffs' breach of express warranty claim must be dismissed.

## III. Count V – Redhibition

Plaintiffs' prayers for relief under redhibition must be limited to recovery for economic loss. The LPLA contains exclusive tort theories of recovery against a manufacturer for damage caused by its product. La. Rev. Stat. § 9:2800.52. "Nevertheless, there is a consensus that the LPLA does not preclude a redhibitory

---

[1] In the amended complaint, they cite multiple statements from the instructions that warn against certain side effects and qualities, which amount to claiming that the pelvic mesh product was safe. (Rec. Doc. 18, at 42-43). Statements included "Transitory local irritation at the wound site and transitory foreign body response may occur," the device is not "subject to degradation or weakening by the action of tissue enzymes," and "Prolene mesh may potentiate an existing infection." *Id.* More specifically, Plaintiff cite Defendants' brochures, which contain the following statements: "Today's minimally invasive procedures offer safe and effective ways to treat sudden urinary loss"; "It's clinically proven, safe, and effective"; "Few patients experience complications"; "There will be very little or no discomfort after the procedures"; and complications are rare. *Id.*

6

action against the manufacturer seeking economic loss damages." *Naz v. Philips Healthcare*, 2018 U.S. Dist. LEXIS 191266, at *20 (E.D. La. Nov. 7, 2018) (citing *Am. Home Assurance Co. v. Oceaneering Int'l, Inc.*, 609 F.App'x 171, 176-78 (5th Cir. 2015). In *Chevron USA Inc. v. Aker Mar. Inc.*, the Fifth Circuit expanded on what damages are recoverable under the LPLA versus redhibition:

> In *De Atley*, Louisiana's Fourth Circuit included as examples of LPLA damages "pain and suffering, medical expenses, damages to property, other than to the product itself, and loss of consortium." On the other hand, "economic loss would include the cost of the product, and the loss of income or profits resulting from the loss of or inability to use the product as intended."

604 F.3d 888, 900-01 (5th Cir. 2010). Any non-LPLA claim based on non-economic losses, including redhibition, must be dismissed. *Baudin v. AstraZeneca Pharms. LP*, 413 F.Supp. 3d 498, 503 (M.D. La. 2019).

Here, the amended complaint contains prayers for pain and suffering, injury, and medical expenses, which are not recoverable under their redhibition claim.[2] Because Plaintiffs brought multiple complaints under the LPLA in this suit, Plaintiffs' recovery under redhibition must be limited to economic losses.

## IV. Punitive Damages

Because Louisiana law applies in this case, Plaintiffs' request for punitive damages must be dismissed. In their amended complaint, Plaintiffs seek punitive damages and also reserve the right to add a punitive damage claim under New Jersey

---

[2] In Count V of their amended complaint, Plaintiffs allege that "Plaintiff experienced a loss of use and reduction in value of the TVT . . . Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages." (Rec. Doc. 18, at 46-47). Plaintiffs pray for "restitution, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just." *Id.* at 47.

law, if later applicable. Defendants contend that Louisiana law precludes Plaintiffs' claim for punitive damages. In response, Plaintiffs argue they should not be precluded from reserving the right to seek punitive damages, especially considering discovery has not yet begun.

In a diversity suit, a court must apply the choice of law rules of the forum state. *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir. 1991) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938)). Louisiana law governs "liability for injury caused by a product, as well as damages . . . when the injury was sustained in this state by a person domiciled or residing in this state." La. Civ. Code art. 3545. However, this rule does not apply if the matter is an exceptional case under the totality of the circumstances, where another state's policies would be seriously impaired if its law was not applied. La. Civ. Code art. 3547. In determining whether a case is exceptional, the court weighs "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." La. Civ. Code. Art 3515; *see* La. Civ. Code art 3542.

In *Shively v. Ethicon, Inc.*, a case almost factually identical to the present, the plaintiff sought punitive damages under the "exceptional case" rule. *Shively v. Ethicon, Inc.*, 2018 U.S. Dist. LEXIS 217890, at *5 (W.D. La. Dec. 27, 2018). The plaintiff argued that New Jersey's policy of deterring wrongful conduct of its citizens would be disabled by the application of Louisiana law, and so the case was exceptional

8

and New Jersey law should apply. *Id*. The court highlighted that many defective goods came from other states, but more importantly, the harms occurred in Louisiana. *See id*. at *5. The court held that "[w]hile New Jersey certainly has an interest in preventing manufacturers . . . of defective medical products and devices from placing them in the stream of commerce . . . this interest is not so great as to transform this into an exceptional [case]." *Id*.

Like *Shively*, although New Jersey may have an interest in the present case, this is not enough to transform this into an exceptional case, especially since the harms occurred in Louisiana. Because of this, Louisiana law applies. Louisiana courts have repeatedly excluded punitive damages in LPLA cases. *E.g.*, *McLaughlin v. GlaxoSmithKline, LLC*, No. Civ.A. 12-2946, 2014 WL 669349, at *3 (W.D. La. Jan. 6, 2014); *see also Cheeks v. Bayer Corp.*, No. Civ.A. 03–132., 2003 WL 1748460, at *1 (E.D. La. Mar. 28, 2003). Therefore, Plaintiffs' request for punitive damages is precluded.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss **(Rec. Doc. 28)** be **GRANTED.**

New Orleans, Louisiana, this 14th day of December, 2021.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

9